Case number 24-3363 from the Western District of Missouri, American Sentinel Insurance Company v. Total Quality Logistics Mr. O'Donnell Thank you, your honors. Again, I want to thank the court for the opportunity to present a moral argument this morning. My name is Kurt O'Donnell and I represent TQL, TreeQL Broker in this company. May it please the court, counsel. This case involves the release of an insurer's obligation to defend TQL in a wrongful death action following a truck accident in which the driver of the truck owned and operated by the trucking company was transferred to my client under standard brokerage. This court should reverse the district court's summary judgment orders because the district court erred when it found that Americans' payment of the policy limits the exhaustion of the policy. Without more, we leave the insurer of its contractual obligation to defend. Now, in addition, the record before the court today includes a Second Amendment third-party petition. And in that petition, the claimant seeks to hold TQL liable, vicariously liable, for the conduct of the truck driver. That in and of itself, you know, qualifies or leaves actually no genuine issue of fact as to total status as an insurer under the policy. And given that record that's before the court, and we did file a motion to ask the court to take judicial notice of that third-party petition, or the Second Amendment third-party petition, which was not opposed by the appellee. Is it too late, though? I wanted to ask about that because the parties really didn't breathe it. My understanding is that it was brought up in the reply brief, but it was not brought up in the response brief. And so we'd be entertaining what is, in essence, a new argument if we took judicial notice. I understand that, but then again, this is a summary judgment appeal from a summary judgment order in which there is to no more review. And the court is entitled to take into account the entire record before the court. And we realize that the district court didn't have that Second Amendment petition, but it is part of the record. And it does seek to hold our client vicariously liable and, therefore, with that, it's insured. But even if that were not the case and the district court really sort of said that it agreed with the plaintiff's argument that there was – that TQL was not an insurer, didn't get into any analysis, it was a line in the footnote, even without that, we would argue that TQL wasn't insured under the policy even given the other types of allegations of negligence because the allegations were not that – were under the policy. You have to be sole and direct negligence had it been to cause that damage. And without question, each of the 15 allegations of, quote, negligence were dependent upon the underlying alleged negligent conduct of the trucking company and the truck driver. I would be – well, first, we have standard reviews, de novo, for summary judgment. In addition, we really have questions of law here that are an issue, and that is also de novo review. Contract interpretation, which is the core of the district court's ruling, is an issue here. I really want to focus on three points. One, the district court's finding that the mere payment of the policy limits related is not – does not comport with the express contract requirements of the insurance policy. That must be a payment of a judgment or a settlement. Even if the payment could be deemed to be a payment of a settlement, the summary judgment record does not address the contract law requirements of good faith in both Missouri and California, which are mandatory and not just something that is elected. But interpleader – you know, I'm questioning this because interpleader is so commonly used in insurance cases. I've seen it over the last 15 years. Every state uses it. The insurance company goes in. I don't know who is entitled to what, but we're just going to pay the full policy limits because we know our liability is greater than that. Why isn't that good enough to exhaust the policy limits? Because that's the first step. That is the first step in the process is paying in the policy limits. Nowhere – if you look at the summary judgment pleadings, nowhere does the American Sentinel characterize the payment as a settlement. You don't find the word settlement anywhere in the summary judgment pleadings. You don't find it in the disbursement order. The American Sentinel has presented one case. It's Allman v. Dorrell. It's an unpublished case out of the Western District of Missouri in which they try to say, you know what, here, yeah, interpleader really is a settlement. But when you look at that case, filing or paying the amount into the registry was the first step. After that, in that case, the party filed a specific application for approval of a wrongful settlement. The underlying case here is wrongful settlement. The words of it were stipulated agreement, right? Sure, stipulated and agreed with regard to how the money is going to be paid. Yeah, but it sounds like a settlement. Well – It's the words, don't it? But the policy doesn't say settlement, and the policy doesn't say stipulated and agreed. And we have to be – this court has to be guided by the expressed words of the policy. If the insurance company wanted to expand, wanted to expand how it could be relieved from its duty to defend, it could simply have said so. Is it ambiguous? Can it reasonably interpret it that word settlement and judgment mean just that and not payment into a court registry? Well, my understanding too, just on that point, is this was kind of conceded by Total Quality before that actually the policy limits were exhausted and that you – the argument was that they still needed to do more. Am I wrong about that? Yeah. Total – TQL certainly conceded that the exhaustion of policy limits were paid, but they weren't paid for a settlement or judgment. That is the next step that's required. That's what you saw in the Allman case in which after the payment into the registry there was an order of settlement for the wrongful death, an order that required an execution of a release. We don't have any evidence of that in the summary judgment. So is the remedy then that they have to pay an additional $1 million up to their policy limits? No. No, duty to defend. One thing we have to recognize in Missouri, the duty to defend is much, much broader than the duty to indemnify. Much broader. Logically speaking, it's going to be much more difficult for the insurance company to escape its obligations to defend than it would to indemnify. The fact is that while we agree that $1 million has been paid, there still is that existing duty to defend that is set forth in the Interpreter Statute as well as the Missouri Common Law. Now, I would be remiss if I didn't address the issue of preservation that was raised in Respondent's Brief. And certainly the arguments that we're making today have expanded upon the argument made before the district court, which that argument was just because you pay the policy limits doesn't relieve you from your duty to defend. We have expanded that without question. I would first say that there is absolutely no – there's absolutely no prejudice to Americans. They fully responded to those arguments. And in addition, this court is able to apply – to respond to those arguments because it's strictly questions of law. It is not a question of fact. No additional factual development is required to address it. And especially with this de novo standard review that we have, I would ask the court to look at its 2016 opinion in U.S. v. Virani. Similar to that, the issues relating to both the characterization of the payment and the Interpreter Statute are purely legal arguments requiring no further factual development. And I would ask the court to take consideration for those arguments under the guidance of U.S. v. Virani. Can I ask you a question about the judicial notice? I've just been noodling about it for a little while, and this may be – this may suggest we shouldn't take judicial notice. But wouldn't the proper remedy to be for the district court to look at it first? The district court didn't have the benefit of the amended petition on the summary judgment motion. And I know we have de novo review, but we typically – we typically review what happened at the time the summary judgment motion was filed. So assuming you're right, wouldn't it require just an automatic – sort of an automatic remand back to the district court? It could. I don't think that that's required given the de novo review. I think that this court has the authority to consider the entire record. Does it have to consider that petition? I don't believe it does. Should it? I believe it does because I don't think that if you just remand back – I mean, it's clear that the petition says they're seeking to hold us liable for vicariously the actions of the truck driver. The court is able to look at that and to enter the appropriate order. But I do understand that the district court didn't have that in front of it at the time. I don't think that precludes this court from making the appropriate orders of summary judgment. And again, we're guided by the plain language of the policy, and the policy simply says sentiment for judgment. …any case law that is presented by the insurance company to suggest that payment of the registry, in and of itself, constitutes either a judgment or a settlement. I would ask the court to look at Miller's Mutual, which is a Missouri case that we mentioned in the summary judgment briefing, but also you mentioned in its briefing before this court. And that case really supports exactly what we're saying. That case was different because in that case, the eastern district of Missouri, Judge Herentz, they were looking at a settlement, not an interpreter action. The payment of the money was into a settlement. The policy language is exactly the same. Payment of the settlement discharges your obligation to the fed. You had unambiguous language. We don't have that here. But more important in that case, the holding in Miller really took upon what? The finding of good faith. In that case, there was a payment that made a settlement on behalf of the named insured. And the court said, but we looked at the facts here. We see that at that time, you also attempted to negotiate a settlement on behalf of the additional insured. Again, this obligation goes not just to the named insured, but to all of the insureds under the policies. As we all know, different insureds can come under the policy for a lot of different reasons. We claim that we are an insured under the policy. And in that case, you tried to negotiate on behalf of that. Therefore, your good faith efforts have been noted and you are released from your duty to identify. There is actually no summary judgment evidence before this court of any effort whatsoever on behalf of the insurance company to settle on behalf of TQL, much less a good faith effort. And the burden in this is on the insurance company to provide that evidence. And without any such evidence, as a matter of fact, summary judgment could not be granted in favor of American Tech. It really had to be granted in favor of TQL because there is no evidence of good faith that would allow them to be released. from their duty to defect. And you don't think good faith would come from the fact that there's a reasonable debate about who's an insured and who's not an insured? There isn't any evidence in the record as to whether there was any discussion of that whatsoever. That's the problem. There isn't any discussion. The district court didn't even look at that issue of good faith. It isn't discussed at all. We don't know what the district court – the district court merely said the policy was – limits were exhausted and therefore there is no – But more broadly, even though the district court didn't accept it, it certainly was down there. And now we have a situation in which an amended petition was filed, which now makes it clear, you say, as to an insured. But that presumes that maybe it was a little unclear before that. Maybe it was – maybe it was a little bit more debatable. And I'm just wondering if that provides a reasonable basis that takes the insurer outside of a bad faith claim. Perhaps if there had been some evidence on behalf of the insurer in the summary judgment that this is one of the reasons we did not attempt to negotiate on behalf of TQL. But there isn't any evidence that they made any attempt to even consider it. It's just – there's nothing. And therefore there's nothing that we could – anything that we would draw from that would be purely speculation. And that's why the good faith fails. When we go to the interpleader statute, we see – we see that the interpleader statute goes beyond what the common law does in North California. It expressly – expressly states in the interpleader statute that even after depositing the limiteds of coverage into the court, an insurer must defend all of its insureds in good faith. Not just the named insured, but all of its insured. And this is notwithstanding any policy provision releasing the duty to defend any of the insurers. I don't know how we can read that language without saying it extremely clearly. So without evidence that could create a genuine issue as to whether an American acted in good faith, summary judgment was required in favor of TQL. As a matter of law, summary judgment could not be granted in favor of American. It should have been granted in favor of TQL. And I respectfully request that this district court's summary judgment order be reversed and remanded with directions to the district court requiring American to defend TQL in the underlying wrongful death action. Thank you, Your Honors. Thank you for the argument. Sean. Thank you, Your Honors. My name is Michael Schock and I'm proud to be here on behalf of American Sentinel Insurance Company. I'm going to begin on a conciliatory note, which probably doesn't happen often in here. And I'm going to say that because of the events that transpired since the filing of our declaratory judgment in the case below, because of the amendment of that petition, I think that resolves the issue as to whether or not TQL is an insured under the policy. Now, it's certainly not a named insured and it's not an additional insured. It's what is commonly understood to be an unnamed insured. So we can set that issue aside. We're no longer going to contest that. I know there might be some procedural issues attached to that because it wasn't presented to the lower court below. But if it was, we would no longer be able to argue that there is no claim for vicarious liability. And we would get right back to the place where we are now, where we're looking at more important issues, more pertinent issues. And I should also just say that when we filed our petition for declaratory judgment, TQL was not an unnamed insured under the policy. So those arguments were valid arguments at the time. They're just not now because of the amendment of the petition below. So the remaining arguments and the arguments that really decide this case are whether or not TQL – I'm sorry – American Sentinels' use of the interclear statute by tendering a million dollars of its policy limits into the court trigger the exhaustion clause under the policy such that it no longer has any obligations to either defend or identify any of its insured, unnamed, additional, or otherwise. Well, counsel, let's look at the Missouri statute. I think the Missouri legislature has spoken on the very issue you just discussed. Tell me why 507.60.4 just doesn't cover this like a glove. Well, it doesn't, Your Honor, because the statute sets forth the procedure for how to – how a party is supposed to initiate an interclear action. And then subsection 4 of that statute gets more specific. It says if the insurer wants to assert this statute as an affirmative defense to a contractual liability clause of action, it has to do additional things beyond the basic filing of an interclear action. It has to meet certain requirements under that subsection. One of those is it has to be filed within 30 days. Another is the insurer has to continue to defend the insurers in good faith. Now it says all of its insurers. Yes. Does that settle this case? It absolutely does not, Your Honor, because we're not seeking to assert that as an affirmative defense. And we don't believe that the statute requires that of every interclear case. It's only required if the insurer wants to assert this subsection as an affirmative defense to an extra contractual or bad faith clause of action. The statute does not say an insurance company must file within 30 days, must continue to defend the insurer. It says it can file an interclear action, but if it wants to go further and get this additional protection from the statute, it needs to do additional things. In this case, we don't deny that we didn't do the additional things. But we don't need to do the additional things because there's no extra contractual claims against us, and there's no basis for any extra contractual claims against American Sentinel. You know, it's important to note that none of the arguments, you know, we've set the one argument aside as to who is a – as to whether or not TQL qualifies as an insurer under the policy. The only remaining arguments were never raised by the court below. The statute was never raised as failure to comply with the statute. That was never raised. It was never argued. It's not even cited to the district court, the 507.06.04? It is, but not the subsection that they're now – I said four in my question, subsection four, 507.06.04. To my recollection, Your Honor, the statute is cited generally as – It was foresighted, even cited. You're making me afraid of the question, too. I don't believe it was, Your Honor. I don't believe it was cited. And certainly the argument wasn't made, and nor was the argument made that the exhaustion clause wasn't triggered because there was neither a settlement or a judgment. Now, I think as to that issue, I think the policy – first of all, the policy dictates the terms under which the insurance carrier is going to provide a defense and to provide coverage. And it has provided two different categories. It says we don't – we have no additional obligations to the insured if we exhaust the policy limits, in this case $1 million, by way of judgment or settlement. So you've got two different categories there. One is judgment. In other words, the court is compelling the insured defendant to pay a certain amount of money. You've got that. You've got the other category of settlement. That's where the insured voluntarily – I'm sorry, the insurance carrier voluntarily surrenders the policy proceeds. And that's what happens – that's what happened here. Now – Counsel, do you do not consider the judgment of the interpleaded court dispersing the policy limits to be a judgment? It is, Your Honor. For what purposes, exactly? Actually, this is a rare case where we've got both categories covered. There is a judgment because the court eventually dispersed the proceeds according to a settlement by the parties. So what we have here is really not – it's not that neither case is covered. It's that both big cases are covered. And I would say an interpleader is a settlement action in the same way that a mediation is a settlement action or an arbitration is a settlement action or a judicially supervised settlement conference is a settlement action. These are all – these are not – these are not an end of themselves. They are a means to an end. All of these are processes by which the parties settle claims. So it wasn't necessary for – it would have been rather cumbersome in the policy to list out all the different variations of the ways that you can settle a case. It might be cumbersome, but don't we have to follow the terms of the policy? I'm sorry? It might be cumbersome, but don't we have to follow the words of the policy? We do, Your Honor. I'm not opposed to it. I think your policy is cumbersome. You don't have to answer that question. Proceed with your argument. Yes. But in order – for the sake of brevity, they identified these two different categories. And I think that by saying settlement, you've got interpleader, you've got mediation, you've got arbitration, you've got settlement conferences. Everybody understands that these are processes by which cases are resolved. And an interpleader is just a statutory mechanism for getting competing parties who have a competing interest to a single fund to agree or to have those funds allocated. So it is a settlement. And if we look at the other category of judgments, you've got motions for summary judgment, you've got trial, you've got judgments as a result of a trial, you've got judgments as a result of a bench trial. It didn't spell all that out. It just said judgment. And all of those are just procedures by which you get to a judgment in the same way that an interpleader is a procedure by which you get to a settlement. The key is that the funds are being voluntarily surrendered by the insurance carrier. So it's settlement in the fact that ASI no longer has control over the funds and it no longer has a dispute with the group of claimants who are claiming that fund. And now the dispute is between the claimants themselves. And as Your Honor pointed out correctly, this ultimately leads to a judgment, which is another way that ASI can exhaust its policy limits. And, you know, at a broader level – I'm sorry. At a broader level, it's disingenuous to suggest that ASI has in some way failed either its named insurers or its unnamed insurers in this case. It has reduced their exposure by a million dollars by taking that money and paying it into the court and letting the court allocate the funds accordingly. That is the responsible thing to do. And it has – to say that it has shirked its responsibilities under the policy is just not even close to the truth when you consider that it right away or within a reasonable period of time, it made the assessment that, hey, our insurers have a lot of exposure here. It's going to probably exceed our policy limits. Let's get our policy limits out there and protect them to the extent we can under the terms of the policy. Unless it was to protect one insurer over the other. I understand this case is a little different because we have the amended petition, but if you did that in order to say, well, we're going to put the money in there so we avoid defending other insurers, then that would be bad faith. Well, that was an argument – so this is interesting. That was an argument that was raised below that ASI or American Sentinel had failed to engage in a good-faith process to have the policy limits allocated fairly amongst the different competing claimants. That argument is not raised on appeal. They abandoned that argument, and now they're raising the different arguments that were never raised below, so they swapped out their arguments. But in any event, the interclear statute is the functional – it's a procedural device that allows for a fair allocation between the competing claimants. So in this case, I suppose it's possible that American Sentinel could have opted against the interclear and they could have instead decided to pay all of the money to whoever they considered to be the most deserving claimant. Well, that's not necessarily in the best interest of the insurer because there are other claimants out there who are going to want to be paid. But doing so under – according to the argument that's being advanced by TQL, that would have protected the insurance carrier, American Sentinel, because that would have clearly qualified as a settlement. But instead, American Sentinel did the responsible thing by getting the funds into the court. An insurer does not have an inalienable right to a defense. It has a right to a defense as prescribed by the language of the policy, and that's true under Missouri law. An insurance policy's language determines when that policy is exhausted and when the insurer has no further obligation to his insurer. I'm quoting Mütter Corp. v. Alliance Underwriters, and that's a Missouri 2017 case. Now the scope of those rights can be expanded or limited by the terms of the policy, but TQL suggests that it is owed a defense by ASI no matter what the policy says. Now there's just simply no authority to support that. Barring some statute or public policy to the contrary, the policy must be enforced as written. And as this part is written, as this policy is written, the duty to defend is limited in scope, and it ends up – and it ends upon exhaustion of the policy limits. As – getting back to something that I referenced earlier on in the waiver of the argument, how can this court say that the court below was wrong in failing to apply 507060 when the lower court had no opportunity to consider that at all? So I don't know – I don't understand how this court could reverse the lower court's decision when the lower court never made a decision on that issue at all. And the reason why the lower court never made a decision is because despite having that argument available to it at the time, that argument was never raised by TQL. By the same token, this argument that the exhaustion clause has not been triggered because there's been no settlement and no judgment, that too was not an argument that was raised at all. So the lower court had no opportunity to rule on it, so it's hard to understand how this court could now say that the lower court was wrong when they were – the lower court was deprived of the opportunity to consider that issue. So for the reasons I've stated, it's my position on behalf of ASI that the lower court be affirmed and that their obligations to determine and identify have been exhausted. Thank you. Thank you, counsel, for the argument. Mr. O'Connor. Thank you, Your Honor. Just a brief rebuttal. I would like to say first, yes, interclear is a process, as is mediation, as is arbitration, and they all do what? It is a process that ends up with a settlement. It's not the end of the process, it's the beginning of the process. We're not asking this court to read the insurance policy any which way. We are asking the court to adhere to the express words used in that policy, and I'm going to say, that police counsel just said, you know, it was that the duty to defend was met with the exhaustion of the payment. That's only part of it. Exhaustion of policy limits upon payment of settlement and or judgment, of which we have no evidence. Was that argument raised below, the settlement or judgment point? No, I agree that it was not. We are expanding upon that there. But the argument below really was that just because you paid the money into the registry didn't eliminate the duty of good faith. This is an expansion of that argument, and I think that we could go to, if you want to rely upon just common law of Missouri and California, the lack of good faith in and of itself would preclude a finding that TQL or that the insurance company no longer had the duty to defend under the policy of TQL and the underlying multiple death action. Your Honors, if you have no further questions, I thank you very much. Thank you, counsel, for the argument. Case number 24-3363 submitted for decision in court.